## Commonwealth v. Dibble et al.

*Claude T. Reno*, Attorney General, and *Frank E. Coho*, Deputy Attorney General, for Commonwealth.

*Thomas E. Doyle*, for defendants.

WICKERSHAM, J., February 17, 1941.—This matter is before us on a motion to strike off a judgment entered against defendant surety for the reasons that the judgment was confessed on a copy of warrant of attorney, and that the warrant of attorney contained in a milk dealer's bond was exercised prematurely.

It appears from the record that defendant Joseph Peter Zysk became surety for defendant Charles E. Dibble, on a milk dealer's bond in the amount of $905.43, for the year May 1, 1939, to and including April 30, 1940; that on April 19, 1940, judgment was entered in this court on a copy of this bond in the sum of $905.43, together with attorney's commission of five percent and interest, to which was attached an affidavit of default, and a copy of findings of fact of a hearing before the Milk Control Commission at which the indebtedness of defendant Dibble was determined in a proceeding to revoke his dealer's license.

The bond under consideration contains the following provisions:

". . . if the principal shall pay all amounts due, including amounts due under said Milk Control Act, and the order of the Milk Control Commission, for milk sold by producers to the principal during the license year upon such terms and conditions as the Milk Control Commission may prescribe, then this obligation shall be void; otherwise, it shall remain in full force and effect.

"And Further, the said principal and surety and each of them do hereby empower the Attorney General of the Commonwealth . . . to appear for and confess judgment against them, or each of them, or against their, or each of their heirs, executors, administrators, successors or assigns, for the said sum of . . . ($905.43) with costs of suit, attorney's commission of five percent, release of all errors and without stay of execution. . . ."

Defendants contend that because the bond of defendants covered a period from May 1, 1939, to and including April 30, 1940, there can be no entry of judgment on the bond until the year is passed. We think this contention cannot be sustained, especially when it is remembered that the amount of the bond is determined in section 501 of the Milk Control Law of April 28, 1937, P. L. 417, to be "in a sum equal to the value of the highest aggregate amount of milk purchased by the dealer from producers

in any one month during the preceding calendar year."
If such a contention were sound, it would be possible for
a milk dealer to buy milk from producers for more than
11 months, or as long as he could persuade the farmers
to ship milk to him, with no possibility of being held lia-
ble on his bond during that time. In such case, the bond
being only in the amount of the value of the previous
year's highest month, there would be very inadequate pro-
tection for the producer.

The bond is given for the payment to producers "upon
such terms and conditions as the Milk Control Commis-
sion may prescribe." When that payment has not been
made there is a default on the bond; and for a default
under the bond there is no provision in the bond requir-
ing that the Commonwealth should wait until the end of
the year. We believe the bond in this case was not such
as to preclude the entry of judgment before May 1, 1940.

Where there is a warrant to confess judgment the judg-
ment may be confessed at any time, whether there be any
amount due at the time of the entry of the judgment or
not: The Integrity Title Insurance, Trust & Safe De-
posit Co. v. Rau et al., 153 Pa. 488; O'Maley v. Pugliese,
272 Pa. 356; Shapiro et al. v. Malarkey, 278 Pa. 78, 82;
Pacific Lumber Co. v. Rodd, 287 Pa. 454, 459. And, of
course, where the instrument provides that no judgment
may be entered until "after default" there must be a de-
fault before the judgment can be entered: Kolf v. Lieber-
man, 282 Pa. 479. In the instant case there is not only no
provision against entry of judgment until after default,
but default had actually been made at the time judgment
was entered, as is shown in the affidavit of default. We
are of opinion, therefore, that this judgment was entered
at a proper time for the entry of the same. . . .

And now, February 17, 1941, it is ordered, adjudged,
and decreed that defendant's motion to strike off the judg-
ment entered against him in this case is dismissed, and
the rule granted on said motion is discharged.